## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MASSACHUSETTS BAY INSURANCE COMPANY,**<br>**440 Lincoln St,**<br>**Worcester, MA 01653** | **Case No.** |
| **Plaintiff,** | |
| **v.** | |
| **KIPP DC SUPPORTING CORPORATION d/b/a KIPP DC – SHAW QALICB, INC., d/b/a KIPP DC – DOUGLAS QALICB,**<br>**2600 Virginia Ave NW, Suite 900**<br>**Washington, D.C. 20037** | |
| **KIPP DC PUBLIC CHARTER SCHOOLS,**<br>**2600 Virginia Ave NW, Suite 900**<br>**Washington, D.C. 20037** | |
| **AND** | |
| **SHANIQUE PEREZ,**<br>**3091 Suitland Road #509**<br>**Suitland, MD 20746** | |
| **Defendants.** | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Massachusetts Bay Insurance Company ("MBIC"), for its Complaint for Declaratory Judgment, states as follows:

### NATURE OF THE ACTION

1.      This is an insurance coverage dispute.

2.      As relevant here, MBIC issued a primary and excess policy (together, the "Policies") providing coverage to KIPP DC Supporting Corporation d/b/a KIPP DC – Shaw

Qalicb, Inc. d/b/a KIPP DC Douglas Qalicb ("KIPP DC Supporting Corporation") and KIPP DC Public Charter Schools (together, "KIPP DC") for a 2017-18 policy period.

3.      KIPP DC seeks coverage from MBIC under one or both policies for a lawsuit currently pending in this Court (the "2021 Lawsuit").

4.      Through the 2021 Lawsuit, the underlying claimant Shanique Perez ("Claimant") seeks redress for injuries suffered as a result of sexual abuse by former KIPP DC teacher, Alan Wade Coleman.  Claimant alleges that KIPP DC is liable because it permitted the abuse to occur.

5.      MBIC owes no duty to defend or indemnify the 2021 Lawsuit.

6.      Coverage under the relevant insuring agreement of MBIC's primary policy – Coverage A of the "School and Educators Coverage Part" – is limited, in relevant part, to "educators wrongful act[s]."

7.      The 2021 Lawsuit does not involve any "educators wrongful act," which is defined to mean "an actual or alleged negligent, act, error or omission, misstatement or misleading statement committed by any insured in the lawful discharge of the duties that are characteristic of, distinctive or inherent to, the operation and functioning of an educational institution[.]"

8.      Instead, the 2021 Lawsuit is predicated on the sexual abuse that Claimant suffered.

9.      Relatedly, because the 2021 Lawsuit is predicated on the sexual abuse that Claimant suffered, the Lawsuit is for "bodily injury."

10.     As a result, a bodily injury exclusion precludes coverage under the School and Educators Coverage Part for the 2021 Lawsuit.

11.     Coverage A of the School and Educators Coverage Part is also subject to an "Abuse and Molestation Exclusion" precluding coverage for claims "arising out of or in any way related to the actual or threatened abuse or molestation by anyone of any person or the negligent

employment, investigation, supervision, reporting to the proper authorities, or failure to so report, or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded."

12.     Given that the 2021 Lawsuit arises out of "abuse or molestation" by former KIPP DC teacher Mr. Coleman, the Abuse and Molestation Exclusion precludes coverage under the School and Educators Coverage Part as well.

13.     The 2021 Lawsuit also does not implicate the MBIC excess policy.

14.     Other terms, conditions, and/or exclusions in the Policies also bar or limit coverage for the 2021 Lawsuit.

15.     Accordingly, MBIC seeks a declaration that, under the Policies, it is not obligated to defend or indemnify KIPP DC in connection with the 2021 Lawsuit.

## THE PARTIES

16.     MBIC is an insurance company organized under the laws of the state of New Hampshire, with its principal place of business in Worcester, Massachusetts.

17.     KIPP DC Supporting Corporation is a not-for-profit network of college-preparatory public charter schools authorized to conduct business in the District of Columbia.  KIPP DC Supporting Corporation maintains its principal place of business at 2600 Virginia Avenue NW, Suite 900, Washington, D.C. 20037.

18.     KIPP DC Public Charter Schools is a not-for-profit public charter school authorized to conduct business in the District of Columbia.  KIPP DC Public Charter Schools maintains its principal place of business at 2600 Virginia Avenue NW, Suite 900, Washington, D.C. 20037.

19.     Shanique Perez is an adult resident of the state of Maryland and a citizen of the United States of America.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, 2201 and 2202, as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and MBIC seeks declaratory relief with respect to a case of actual controversy within this Court's jurisdiction.

21.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred within this District.

## THE POLICIES

22.     MBIC issued to KIPP DC two policies—Policy No. ZD3 D303270 00 (the "Primary Policy") and Policy No. UH3 D303271 00 (the "Excess and Umbrella Policy")—for the Policy Period of July 1, 2017 to July 1, 2018.

### The Primary Policy

23.     The Primary Policy's only potentially applicable coverage part—the School and Educators Legal Liability Coverage Part (the "School and Educators Coverage Part")—affords specified coverage up to a $1 million each "educators wrongful act" or "wrongful act" limit of liability, subject to a $3 million aggregate limit and a $10,000 each "claim" deductible.  (A true and correct copy of the Primary Policy is attached hereto as Exhibit A.)

24.     The School and Educators Coverage Part's scope of coverage is limited in relevant part as follows:

**1. Insuring Agreements**

a.     **Coverage A – Educators Liability**

We will pay, on behalf of the insured, those sums which the insured becomes legally obligated to pay as "loss" due to a "claim" arising out of an "educators wrongful act" to which this insurance applies.

4

25.     Under the School and Educators Coverage Part, MBIC "will have no duty to defend any insured against any 'claim' to which this Coverage Part does not apply."

26.     The School and Educators Coverage Part is subject to several exclusions.

27.     **SECTION I – COVERAGES, 4. Exclusions Applicable to Coverage A – Educators Liability** of the School and Educators Coverage Part provides in relevant part as follows:

This insurance does not apply to:

**a.  "Bodily Injury", "Personal and Advertising Injury", or "Property Damage"**

"Bodily injury", "property damage" or "personal and advertising injury".

This exclusion **a.** does not apply to the extent the "loss" arises out of a "civil rights claim".

*     *     *

**c.  Abuse and Molestation**

Any "claim" directly or indirectly arising out of or in any way related to:

**(1)** The actual or threatened abuse or molestation by anyone of any person regardless whether the abuse or molestation was specifically intended or resulted from negligent conduct and regardless whether any insured subjectively intended the injury or damage for which a "claim" is made, or

**(2)** The negligent:

    **(a)**     Employment;

    **(b)**     Investigation;

    **(c)**     Supervision;

    **(d)**     Reporting to the proper authorities, or failure to so report; or

    **(e)**     Retention

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **(1)** above.

5

This exclusion **c.** does not apply to the extent the "loss" arises out of a "civil rights claim".

28.    **SECTION I – COVERAGES, 6. Exclusions Applicable to Coverage A – Educators Liability and Coverage B – Directors and Officers Liability** of the School and Educators Coverage Part provides in relevant part as follows:

This insurance does not apply to:

*         *         *

**s.  Prior & Pending Proceedings**

Any "claim" based upon, arising out of or in any way related to any litigation, administrative or arbitration proceeding, or written demand pending against any Insured, or any order, decree or judgment entered prior to or on the Inception Date set forth in the Declarations.

29.    **SECTION VI – DEFINITIONS** of the School and Educators Coverage Part includes the following definitions:

**2.**    "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

**3.**    "Civil rights claim" means a "claim" by a past, current or accepted student, or applicant for admission, seeking "loss" for discrimination resulting in a violation of Title IX of the Education Amendments of 1972 or similar federal or state laws, or for other education-related due process granted under federal or state laws.

**4.**    "Claim" means:

**a.**  A written demand for monetary damages; or

**b.**  A "suit" against an insured for an "educators wrongful act" or "wrongful act" to which this insurance applies.

*         *         *

**9.**    "Educators Wrongful Act" means any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by any insured:

6

    **a.**  In the lawful discharge of the duties that are characteristic of, distinctive or inherent to, the operation and functioning of an educational institution, including but not limited to:

        **(1)**  classroom or other educational instruction;

        **(2)**  career and academic guidance;

        **(3)**  compliance with Family Education Rights and Privacy Act (FERPA) or the Buckley Amendment;

        **(4)**  grading and class content;

        **(5)**  admittance procedures or academic placement;

        **(6)**  expulsion or discipline procedures;

        **(7)**  student enrollment;

        **(8)**  provision of equal access to education under state and federal laws;

        **(9)**  participation in any school program, education program or extracurricular activities; or

        **(10)**  discrimination resulting in a violation of Title IX of the Education Amendments of 1972 or similar federal or state laws; and

    **b.**  While acting within the course and scope of his or her duties for the Named Insured.

*     *     *

**<u>The Excess and Umbrella Policy</u>**

30.    The Excess and Umbrella Policy contains a $25 million general aggregate limit of liability.  (A true and correct copy of the Umbrella Policy is attached hereto as Exhibit B.)

31.    The Excess and Umbrella Policy contains Follow Form Excess Liability coverage (the "Excess Coverage Part") and Umbrella Liability coverage (the "Umbrella Coverage Part").

32.    Pursuant to **SECTION I – INSURING AGREEMENTS, 1. Coverage A – Follow Form Excess Liability Insuring Agreement**, coverage under the Excess Coverage Part is limited in relevant part as follows:

7

**a.** We will pay on behalf of the insured those sums in excess of the "underlying insurance" which the insured becomes legally obligated to pay as damages, provided:

    (1)    Such damages are covered by "underlying insurance";

    (2)    The event which triggers coverage on the "underlying insurance" takes place during the policy period of this insurance, and

    (3)    The applicable Limit of Insurance of the "underlying insurance" is exhausted by payment of judgments, settlements, related costs or expenses for damages also covered under this policy. We will not pay if the Limit of Insurance of "underlying insurance" is exhausted by payment for damages to which this insurance does not also apply.

**b.** We will not pay damages that the "underlying insurance" does not pay for any reason other than exhaustion of limits of the "underlying insurance" by payment of judgments, settlements, related costs or expenses.

33.    Pursuant to **SECTION I – INSURING AGREEMENTS, 2. Coverage B – Umbrella Liability Insuring Agreement**, coverage under the Umbrella Coverage Part is limited in relevant part as follows:

**a.** We will pay on behalf of the insured those sums in excess of the "retained limit" shown in the Declarations which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" and "advertising injury" to which this coverage applies, provided:

    **(1)**    The:

        **(a)**    "Bodily injury" or "property damage" is caused by an "occurrence"; or

        **(b)**    "Personal injury" and "advertising injury" is caused by an offense arising out of your business;

    Which took place within the coverage territory as described in section **IV. COVERAGE TERRITORY**;

    **(2)**    The "bodily injury" or "property damage" occurs during the policy period, and the offense causing "personal injury" or "advertising injury" is first committed during our policy period; and

    **(3)**    Prior to the policy period, no insured and no "employee" authorized by you to give or receive notice of an "occurrence", offense or claim, knew that the "bodily injury", "property damage", "personal injury" or "advertising

injury" had occurred, in whole or in part. If such an insured or authorized "employee" knew, prior to the policy period, that the "bodily injury", "property damage", "personal injury" or "advertising injury" occurred, then any continuation, change or resumption of such "bodily injury", "property damage, "personal injury" or "advertising injury" during or after the policy period will be deemed to have been known prior to the policy period. However, "bodily injury", "property damage", "personal injury" or "advertising injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured or by any "employee" authorized by you to give or receive notice of an "occurrence", offense or claim, includes any continuation, change or resumption of that "bodily injury", "property damage", "personal injury" or "advertising injury" after the end of the policy period.

*   *   *

34.    **SECTION VII – EXCLUSIONS**, **3.** Applicable to **Coverage B – Umbrella Liability** only, as amended by Endorsement No. 475-0238 12 14, provides, in relevant part, as follows:

This insurance does not apply to:

**Abuse and Molestation**

Any liability or expense arising out of:

(1)    The actual or threatened abuse or molestation by anyone of any person regardless whether the abuse or molestation was specifically intended or resulted from negligent conduct and regardless whether any insured subjectively intended the injury or damage for which a claim is made, or

(2)    The negligent:

    (a) Employment;

    (b) Investigation;

    (c) Supervision;

    (d) Reporting to the proper authorities, or failure to so report; or

    (e) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **(1)** above.

35.    **SECTION IX. DEFINITIONS** of the Excess and Umbrella Policy includes the following definitions:

4.    **"Bodily injury"** means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

\*        \*        \*

22.    **"Underlying Insurance"** means the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance for the limits and policy periods indicated. It includes any policies issued to replace those policies during the term of this insurance that provide:

a.    At least the same limits of liability or limits of insurance; and

b.    The same hazards insured against, except as modified by general program revisions or as agreed to by us in writing.

36.    The Schedule of Underlying Insurance in the Excess and Umbrella Policy lists the School and Educators Coverage Part of the Primary Policy.

## THE LAWSUITS

37.    On February 2, 2018, an anonymous "Jane Doe" plaintiff filed a lawsuit in this Court against KIPP DC Supporting Corporation, Capital City Public Charter School ("Capital City"), Alan Wade Coleman, Susan Schaeffler Ettinger, and Janes Roe (1-10) ("2018 Lawsuit"), asserting counts for violation of Title IX and 42 U.S.C. § 1983, as well as counts alleging assault, battery, intentional infliction of emotional distress, negligence per se, and negligent employment, supervision, investigation, retention or reporting to the proper authorities.  (A true and correct copy of the 2018 Lawsuit Complaint is attached as Exhibit C.)

38.    On January 3, 2019, this Court dismissed the 2018 Lawsuit as to all defendants on statute-of-limitations grounds.

39.     After the Court dismissed the 2018 Lawsuit, the District of Columbia amended the statute of limitations applicable to claims "arising out of sexual abuse."  *See* D.C. Law 22-311 § 3.

40.     As a result, on April 6, 2021, Claimant filed a lawsuit styled *Shanique Perez v. KIPP DC Supporting Corporation d/b/a KIPP DC Shaw Qalicb, Inc. d/b/a KIPP DC Douglas Qalicb*, Case No. 1:21-cv-00929 (the "2021 Lawsuit") in this Court against KIPP DC Supporting Corporation, Capital City, Mr. Coleman, Ms. Ettinger, and Defendants Roe 1-10, seeking damages in connection with sexual abuse perpetrated by Mr. Coleman.

41.     Claimant's original complaint in the 2021 Lawsuit asserted causes of actions against KIPP DC for violations of Title IX of the Education Amendments Act, negligent supervision and hiring/retention, negligence, premises liability, intentional infliction of emotional distress and negligent infliction of emotional distress.  (A true and correct copy of this Complaint is attached as Exhibit D.)

42.     Between 2021 and 2023, Claimant voluntarily dismissed Mr. Coleman, Ms. Ettinger, and Defendants Roe 1-10 from the 2021 Lawsuit.

43.     After KIPP DC filed a motion to dismiss the 2021 Lawsuit, this Court granted this motion in part on July 25, 2024, dismissing the Title IX count against KIPP DC.  (A true and complete copy of the Court's July 25, 2024 Memorandum and Opinion is attached as Exhibit E.)

44.     Following this Court's July 25, 2024 ruling, on July 31, 2024, Claimant filed the First Amended Complaint, which is the operative complaint in the 2021 Lawsuit.  (A true and complete copy of the First Amended Complaint is attached as Exhibit F.)

45.     Claimant alleges that she was in an abusive and manipulative relationship with Mr. Coleman between 2004 and 2009 and that Mr. Coleman sexually abused her.

46.    Claimant alleges that administrators at KIPP DC allegedly knew about the sexual abuse or knew that Mr. Coleman had an inappropriate relationship with Claimant while she was in eighth grade, and that KIPP DC failed to take any action to stop the abusive sexual behavior.

47.    The 2021 Lawsuit's only current causes of action against KIPP DC are for: gross negligence; grossly negligent hiring, supervision, and retention; premises liability; and intentional infliction of emotional distress.

48.    As relief, the 2021 Lawsuit seeks compensatory damages, punitive damages, past and future medical expenses, lost wages, loss of educational and monetary opportunities and other economic losses, and reasonable attorney's fees and costs.

## INSURANCE COVERAGE DISPUTE

49.    On July 6, 2018, MBIC agreed to defend KIPP DC only for the 2018 Lawsuit's counts for violations of Title IX and 42 U.S.C. § 1983 for the 2018 Lawsuit.

50.    With respect to the 2018 Lawsuit, MBIC denied coverage for the counts alleging assault, battery, intentional infliction of emotional distress, negligence per se, and negligent employment, supervision, investigation, retention or reporting to the proper authorities.

51.    When Claimant originally filed the 2021 Lawsuit, MBIC similarly defended KIPP DC against the 2021 Lawsuit's Title IX count while denying coverage for the other counts.

52.    Capital City is not an "insured" under the Policies.

53.    Accordingly, MBIC did not defend Capital City in connection with the 2018 Lawsuit or 2021 Lawsuit (together, the "Lawsuits").

54.    After the dismissal of the 2021 Lawsuit's Title IX count and the filing of the First Amended Complaint, MBIC issued an August 8, 2024 letter to KIPP DC, advising that no coverage was available for the 2021 Lawsuit.

55.    KIPP DC seeks insurance coverage from MBIC under the Policies in connection with the 2021 Lawsuit.

56.    MBIC denies that coverage is available for KIPP DC for the 2021 Lawsuit under the Policies after the dismissal of the lawsuit's Title IX count.

57.    An actual, present and bona fide controversy exists between MBIC and KIPP DC with respect to whether there is insurance coverage for the 2021 Lawsuit under the Policies.

58.    A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policies.

### COUNT I – DECLARATORY JUDGMENT
### (No Coverage Under the Primary Policy)

59.    MBIC incorporates by reference each and every allegation set forth in the proceeding paragraphs 1 through 58 as though set forth fully herein.

60.    The only relevant insuring agreement of the Primary Policy – Coverage A of the School and Educators Coverage Part of the Primary Policy – limits coverage to "sums which the insured becomes legally obligated to pay as 'loss' due to a 'claim' arising out of an 'educators wrongful act' to which this insurance applies."

61.    An "educators wrongful act" is defined in relevant part as "any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by any insured: a. [i]n the lawful discharge of the duties that are characteristic of, distinctive or inherent to, the operation and functioning of an educational institution[.]"

62.    The 2021 Lawsuit seeks damages for the sexual abuse that Claimant suffered between 2004 and 2009 and alleged negligent retention, investigation, training, hiring, supervision and failure to report by KIPP DC.

63.     Sexual abuse–and any related negligence by KIPP DC—is not an act, error, or omission in the lawful discharge of the duties that are characteristic of, distinctive or inherent to, the operation and function of an educational institution.

64.     The 2021 Lawsuit does not allege any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by any insured in the lawful discharge of the duties that are characteristic of, distinctive or inherent to, the operation and function of an educational institution.

65.     Therefore, the 2021 Lawsuit does not allege an "educators wrongful act."

66.     Besides Coverage A of the School and Educators Coverage Part, no other insuring agreement of the Primary Policy is implicated by the 2021 Lawsuit.

67.     Therefore, the 2021 Lawsuit is not within the Primary Policy's scope of coverage and, as a result, MBIC has no duty to defend or indemnify KIPP DC in connection with the 2021 Lawsuit.

## COUNT II – DECLARATORY JUDGMENT
### (The Bodily Injury Exclusion)

68.     MBIC incorporates by reference each and every allegation set forth in the proceeding paragraphs 1 through 67 as though set forth fully herein.

69.     Pursuant to exclusion **a.** of **I – COVERAGES, 4. Exclusions Applicable to Coverage A – Educators Liability** (the "Bodily Injury Exclusion"), coverage is unavailable for "'[b]odily injury', 'property damage', or 'personal and advertising injury'." However, "[t]his exclusion . . . does not apply to the extent the 'loss' arises out of a 'civil rights claim'."

70.     Section IV. of the School and Educators Coverage Part defines "civil rights claim" as a "claim" by a past, current or accepted student, or applicant for admission, seeking "loss" for

discrimination resulting in a violation of Title IX of the Education Amendments of 1972 or similar federal or state laws, or for other education-related due process granted under federal or state laws.

71.    The 2021 Lawsuit seeks damages for the sexual abuse that Perez suffered between 2004 and 2009.

72.    The 2021 Lawsuit thus seeks damages for "bodily injury."

73.    The 2021 Lawsuit does not seek "loss" for discrimination resulting in a violation of Title IX of the Education Amendments of 1972 or similar federal or state laws, or for other education-related due process granted under federal or state laws.

74.    Thus, the Bodily Injury Exclusion precludes coverage for the 2021 Lawsuit.

75.    Accordingly, MBIC has no duty to defend or indemnify KIPP DC for the 2021 Lawsuit under the Primary Policy.

**COUNT III – DECLARATORY JUDGMENT**
**(The Abuse and Molestation Exclusion)**

76.    MBIC incorporates by reference each and every allegation set forth in the proceeding paragraphs 1 through 75 as though set forth fully herein.

77.    Pursuant to exclusion **c.** of **I – COVERAGES, 4. Exclusions Applicable to Coverage A – Educators Liability** (the "Abuse and Molestation Exclusion"), coverage is unavailable for "any 'claim' directly or indirectly arising out of or in any way related to: (1) [t]he actual or threatened abuse or molestation by anyone of any person regardless whether the abuse or molestation was specifically intended or resulted from negligent conduct and regardless whether any insured subjectively intended the injury or damage for which a 'claim' is made", or "(2) [t]he negligent (a) [e]mployment; (b) [i]nvestigation; (c) [s]upervision; (d) [r]eporting to the proper authorities, or failure to so report; or (e) [r]etention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **(1)** above."

78.     This exclusion does not apply to the extent "loss" arises out of a "civil rights claim."

79.     The 2021 Lawsuit seeks damages for the sexual abuse that Perez suffered between 2004 and 2009.

80.     The 2021 Lawsuit further alleges that KIPP DC negligently hired, investigated, trained, and supervised employees, and failed to report sexual abuse.

81.     The 2021 Lawsuit does not seek "loss" for discrimination resulting in a violation of Title IX of the Education Amendments of 1972 or similar federal or state laws, or for other education-related due process granted under federal or state laws.

82.     Consequently, the 2021 Lawsuit arises out of or in any way relates to the actual or threatened abuse or molestation by anyone of any person and the negligent employment, investigation, supervision, reporting to the proper authorities, or failure to so report, or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded.

83.     Therefore, the Abuse and Molestation Exclusion precludes coverage for the 2021 Lawsuit.

84.     Accordingly, MBIC owes no duty to defend or indemnify KIPP DC for the 2021 Lawsuit under the Primary Policy.

**COUNT IV – DECLARATORY JUDGMENT**
**(Prior & Pending Proceedings Exclusion)**

85.     MBIC incorporates by reference each and every allegation set forth in the proceeding paragraphs 1 through 84 as though set forth fully herein.

86.     Pursuant to the School and Educators Coverage Part's Prior & Pending Proceedings Exclusion, coverage is unavailable for "[a]ny 'claim' based upon, arising out of or in any way related to any litigation, administrative or arbitration proceeding, or written demand pending

against any Insured, or any order, decree or judgment entered prior to or on the Inception Date set forth in the Declarations."

87.     The Inception Date set forth in the Declarations is July 1, 2017.

88.     The 2021 Lawsuit alleges that Coleman was charged with First Degree Child Sex Abuse on July 29, 2016 in the District of Columbia.

89.     The 2021 Lawsuit also alleges that Coleman was indicted by the state of Maryland on various criminal charges including sexual abuse of a minor on October 20, 2016.

90.     The 2021 Lawsuit alleges that Coleman entered into a plea agreement and pled guilty to sex abuse of a minor in Montgomery County, Maryland in 2017.

91.     The 2021 Lawsuit further alleges that Mr. Coleman entered into a plea agreement and pled guilty to first-degree child sex abuse in the District of Columbia in October 2017.

92.     The criminal proceedings against Coleman began prior to the Inception Date set forth in the Declarations.

93.     The 2021 Lawsuit is based upon, arising out of, and related to the sexual abuse for which Coleman pled guilty.

94.     The 2021 Lawsuit is based upon, arising out of, and related to a proceeding pending—or order, decree or judgment entered—before the Inception Date set forth in the Declarations.

95.     Accordingly, MBIC owes no duty to defend or indemnify KIPP DC for the 2021 Lawsuit under the Primary Policy.

## COUNT V – DECLARATORY JUDGMENT
### (No Coverage Under the Excess and Umbrella Policy)

96.     MBIC incorporates by reference each and every allegation set forth in the proceeding paragraphs 1 through 95 as though set forth fully herein.

17

97.     The 2021 Lawsuit implicates neither the Excess Coverage Part nor the Umbrella Coverage Part of the Excess and Umbrella Policy.

98.     The Insuring Agreement as set forth in the Excess Coverage Part of the Excess and Umbrella Policy provides that MBIC "will pay on behalf of the insured those sums in excess of the 'underlying insurance' which the insured becomes legally obligated to pay as damages, provided: (1) [s]uch damages are covered by 'underlying insurance'; (2) [t]he event which triggers coverage on the 'underlying insurance' takes place during the policy period of this insurance, and (3) [t]he applicable Limit of Insurance of the 'underlying insurance' is exhausted[.]"

99.     As relevant here, the Schedule of Underlying Insurance in the Excess and Umbrella Policy lists the School and Educators Coverage Part of the Primary Policy.

100.    The 2021 Lawsuit is not covered under the School and Educators Coverage Part or any other coverage part of the Primary Policy.

101.    Therefore, the 2021 Lawsuit does not involve damages that are covered by "underlying insurance."

102.    Moreover, the applicable Limit of Insurance of the "underlying insurance" has not been exhausted by payment of judgments, settlements, related costs or expenses for damages also covered under the Excess and Umbrella Policy.

103.    Therefore, the 2021 Lawsuit does not implicate the Excess Coverage Part of the Excess and Umbrella Policy.

104.    The Insuring Agreement as set forth in the Umbrella Coverage Part of the Excess and Umbrella Policy provides in relevant part that MBIC "will pay on behalf of the insured those sums in excess of the 'retained limit' shown in the Declarations which the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', 'personal injury' and

18

'advertising injury' to which this coverage applies, provided: . . . (2) [t]he 'bodily injury' or 'property damage' occurs during the policy period[.]"

105.     The 2021 Lawsuit seeks damages for the sexual abuse that Perez suffered between 2004 and 2009.

106.     The 2021 Lawsuit does not seek damages for "bodily injury" that occurred during the policy period.

107.     The 2021 Lawsuit also does not seek damages for "property damage," "personal injury," or "advertising injury."

108.     Therefore, the 2021 Lawsuit does not implicate the Umbrella Coverage Part of the Excess and Umbrella Policy.

109.     Moreover, pursuant to the Umbrella Coverage Part's Abuse and Molestation Exclusion, coverage is unavailable for "[a]ny liability or expenses arising out of: (1) [t]he actual or threatened abuse or molestation by anyone of any person regardless whether the abuse or molestation was specifically intended or resulted from negligent conduct and regardless whether any insured subjectively intended the injury or damage for which a claim is made, or (2) the negligent: (a) [e]mployment; (b) [i]nvestigation; (c) [s]upervision; (d) [r]eporting to the proper authorities, or failure to so report; or (e) [r]etention; of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **(1)** above."

110.     The 2021 Lawsuit seeks damages for sexual abuse that Claimant suffered between 2004 and 2009.

111.     The 2021 Lawsuit further seeks damages for negligent employment, investigation, supervision, failure to report to proper authorities, and retention of Mr. Coleman.

112.    Accordingly, even if the Umbrella Coverage Part of the Excess and Umbrella Policy was implicated, which it is not, the Umbrella Coverage Part's Abuse and Molestation Exclusion precludes coverage for the 2021 Lawsuit.

113.    Accordingly, the Excess and Umbrella Policy does not provide coverage to KIPP DC for the 2021 Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Massachusetts Bay Insurance Company, prays that this Court enter a judgment in its favor and against Defendants, awarding the following relief:

a.    A declaration that MBIC has no duty to defend or indemnify KIPP DC in connection with the 2021 Lawsuit under any of the Policies;

b.    For recoupment of defense costs to the extent that MBIC paid defense costs for uncovered claims;

c.    For costs of suit incurred herein; and

d.    For such other and further relief at law or in equity that the Court deems just and proper.

## RESERVATION OF RIGHTS

The Policies contain terms, conditions, and exclusions that may be relevant to the 2021 Lawsuit but that are not currently implicated by this declaratory judgment action.  Nothing in this complaint should be construed as a waiver by MBIC of any coverage defenses at law, in equity, or under the Policies.  MBIC continues to reserve all rights with respect to any claim for coverage made under the Policies where appropriate, and waives none.  MBIC continues to reserve the right to raise all other terms, conditions, and exclusions as defenses to coverage for any claim made under the Policies where appropriate.

DATED:       November 5, 2024

By:  /s/ *Milad Emam*
David F. Cutter (*Pro Hac Vice forthcoming*)
Milad Emam (DC Bar No. 1014018)
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
Ph.:    312-762-3100
Fax:    312-762-3200
Email:  dcutter@batescarey.com;
         memam@batescarey.com

*Attorneys for Plaintiff Massachusetts Bay*
*Insurance Company*

8513483